UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------

MICHAEL FEGES,

     Plaintiff,

   v.

CHURCHILL CAPITAL CORP III,
MICHAEL KLEIN, JEREMY PAUL
ABSON, GLENN R. AUGUST, MICHAEL
ECK, BONNIE JONAS, MARK KLEIN,
MALCOM S. MCDERMID, and KAREN G.
MILLS,

     Defendants.

---------------------------------------------------------

Case No._____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

   Plaintiff Michael Feges ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

   1.  This is an action brought by Plaintiff against Churchill Capital Corp III ("Churchill or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Churchill will combine with privately held MultiPlan, Inc., through Music Merger Sub I, Inc. ("First Merger Sub"), Music Merger Sub II LLC ("Second Merger Sub"), Polaris Parent Corp. ("MultiPlan Parent"), and Polaris Investment Holdings, L.P. ("Holdings," and together with MultiPlan, Inc. and MultiPlan Parent, "MultiPlan") (the "Proposed Transaction").

2.      On July 12, 2020, Churchill issued a press release announcing that Churchill and MultiPlan had entered into an Agreement and Plan of Merger dated July 12, 2020 (the "Merger Agreement").

3.      Under the terms of the Merger Agreement, (i) First Merger Sub will merge with and into MultiPlan Parent with MultiPlan Parent being the surviving corporation in the merger (the "First Merger");[1] and (ii) Second Merger Sub will merge with and into the surviving corporation with Second Merger Sub being the surviving entity in the merger (the "Second Merger").[2] Thereafter, Churchill will own, directly or indirectly, all of the outstanding equity interests of the surviving company and the equityholders of Holdings will own a portion of Churchill's Class A common stock.  The aggregate consideration to be paid to Holdings will be equal to $5,678,000,000 and will be paid in a combination of stock and cash consideration.

4.      In connection with the Proposed Transaction, Churchill, a special purpose acquisition vehicle, will contribute up to $1.1 billion of cash raised during its initial public offering ("IPO") in February 2020.  Further, additional investors have committed to participate in the transaction through PIPE commitments to a $2.6 billion new private capital raise consisting of a $1.3 billion common stock at $10 per share and $1.3 billion of 6 percent interest convertible debt, with a conversion price of $13 per share.

---

[1] As a result of the First Merger, Churchill will own 100% of the outstanding common stock of MultiPlan Parent as the surviving corporation in the First Merger and each outstanding share of class A common stock and class B common stock of MultiPlan Parent (other than treasury shares or shares owned by Churchill, First Merger Sub, Second Merger Sub or MultiPlan Parent) will be cancelled and converted into the right to receive the merger consideration in accordance with the Merger Agreement.

[2] As a result of the Second Merger, Churchill will own 100% of the outstanding interests in Second Merger Sub.

5.      Upon completion of the Proposed Transaction: (i) Churchill's public stockholders (other than the investors participating in the PIPE investment) will own approximately 16.0% of the combined company, (ii) the PIPE investors will own approximately 19.2%; (iii) Churchill Sponsor III LLC (the "Sponsor") (and its affiliates), whose shares are beneficially owned by defendant Michael Klein,[3] the Company's Chief Executive Officer ("CEO") and Chairman of the Board, will own approximately 4.2%; and (iv) current indirect investors in MultiPlan Parent will own approximately 60.5%.

6.      On July 31, 2020, Churchill filed a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") with the SEC.  As set forth below, the Proxy Statement, which recommends that Churchill stockholders vote in favor of the Proposed Transaction, omits material information, which renders the Proxy Statement false and misleading.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

7.      In short, unless remedied, Churchill's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

---

[3] Defendant Michael Klein is the sole stockholder of M. Klein Associates, Inc., which is the managing member of Sponsor.

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

9.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Churchill is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

11.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Churchill.

12.     Defendant Churchill is a Delaware corporation with its principal executive offices located at 640 Fifth Avenue, 12th Floor, New York, NY 10019.  The Company is a public investment vehicle formed for the purpose of effecting a merger, acquisition, or similar business combination.  Churchill's common stock trades on the New York Stock Exchange under the ticker symbol "CCXX."

13.     Defendant Michael Klein is, and has been at all relevant times, Churchill's CEO, Chairman of the Board and a director of the Company.  Defendant Michael Klein is the founder and managing partner of M. Klein and Company, LLC ("M. Klein and Company") and the CEO and Chairman of the Board of Directors of Churchill Capital Corp II, a blank check company whose Sponsor is an affiliate of M. Klein and Company.  Defendant Michael Klein was previously the co-founder and Chairman of Churchill Capital Corp, a blank check company formed in 2018.

14.     Defendant Jeremy Paul Abson ("Abson") is, and has been at all relevant times, a director of the Company.  Defendant Abson is also a director of Churchill Capital Corp II.

15.     Defendant Glenn R. August ("August") is, and has been at all relevant times, a director of the Company.  Defendant August is also a director of Churchill Capital Corp II.

16.     Defendant Michael Eck ("Eck") is, and has been at all relevant times, a director of the Company.  Defendant Eck is also a Managing Director at M. Klein and Company.

17.     Defendant Bonnie Jonas ("Jonas") is, and has been at all relevant times, a director of the Company.

18.     Defendant Mark Klein is, and has been at all relevant times, a director of the Company.  Defendant Mark Klein is also a director of Churchill Capital Corp II and has served as a Managing Member and Majority Partner of M. Klein and Company since 2010.

19.     Defendant Malcolm S. McDermid ("McDermid") is, and has been at all relevant times, a director of the Company.  Defendant McDermid is also a director of Churchill Capital Corp II and previously served as a director of Churchill Capital Corp.

20.     Defendant Karen G. Mills ("Mills") is, and has been at all relevant times, a director of the Company.  Defendant Mills is also a director of Churchill Capital Corp II and previously served as a director of Churchill Capital Corp.

21.     Defendants identified in paragraphs 13 – 20 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

22.     First Merger Sub is a Delaware corporation and a wholly owned subsidiary of Churchill.

23.     Second Merger Sub is a Delaware limited liability company and a wholly owned subsidiary of Churchill.

24.     Holdings is a Delaware limited partnership and its principal executive office is c/o Hellman & Friedman LLC, 415 Mission Street, Suite 5700, San Francisco, CA 94105.  Holdings is a holding company and the parent entity of MultiPlan Parent.

25.     MultiPlan Parent is a Delaware corporation with its principal executive offices located at 115 Fifth Avenue, New York, NY 10003.  MultiPlan Parent is a wholly owned subsidiary of Holdings, and, through its wholly owned subsidiary MultiPlan Inc., is a leading value-added provider of data analytics and technology-enabled end-to-end cost management solutions to the U.S. healthcare industry.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and the Proposed Transaction

26.     Churchill is a public investment vehicle formed for the purpose of effecting a merger, acquisition, or similar business combination.  The Company was founded by a group of current and former business and financial leaders.  Churchill raised $1.1 billion of cash proceeds in an IPO in February 2020.  Following its IPO, Churchill's activity has been limited to the evaluation of business combination candidates.

27.     On July 12, 2020, Churchill issued a press release announcing the Proposed Transaction.  The press release states, in relevant part:

> NEW YORK, NY — July 12, 2020 — Churchill Capital Corp III ("Churchill") (NYSE: CCXX), a public investment vehicle, and MultiPlan, Inc. ("MultiPlan"), a market-leading, technology-enabled provider of end-to-end healthcare cost management solutions, announced today that they have entered into a definitive agreement to merge. The combined company will operate as MultiPlan and will be listed on the NYSE. The transaction implies an initial enterprise value for MultiPlan of approximately $11 billion or approximately 12.9x estimated 2021 Adjusted EBITDA. The transaction will bring to MultiPlan up to $3.7 billion of new equity or equity linked capital to substantially reduce its debt and fund new value-added services.
>
> MultiPlan will continue to operate its business with a relentless focus on delivering service excellence to its payer customers. The existing management team, led by

long-standing CEO Mark Tabak, CFO David Redmond and Chief Revenue Officer Dale White, will continue to lead the business, and Hellman & Friedman affiliates ("H&F") will remain MultiPlan's largest shareholder.

The capital from this transaction, combined with Churchill's expertise, will enable MultiPlan to continue to enhance its core offerings to payers through a significant increase in its data analytics platform, extend into new payer customer segments and expand its platform, increasing the value MultiPlan provides to more than 700 payers, their 60 million consumers and MultiPlan's 1.2 million providers that serve them. Further, the transaction will better position MultiPlan to capitalize on the entire $50 plus billion total addressable market, rather than its current subset of $8 billion, organically and through M&A.

Mark Tabak, CEO of MultiPlan, stated, "I'm tremendously proud of the role MultiPlan plays in driving order, efficiency and fairness in healthcare payments. This transaction allows us to create payer value beyond the tech-enabled cost management and payment integrity services we offer today. As a public company, MultiPlan will have greater strategic and financial flexibility, making it better equipped to expand organically, through adjacent acquisitions and by investing in new technologies. We will deliver even more value for healthcare payers in particular, but also for their consumers and providers."

Allen Thorpe, Partner at Hellman & Friedman, said, "MultiPlan's performance as a privately held company has been outstanding. This transaction strengthens the Company and will allow it to further penetrate the broad and fast-growing healthcare market, driving efficiencies and cost savings that benefit the sector and deliver great outcomes for payers, providers and consumers." He further added, "We are excited to join forces with the Churchill team and continue our partnership with MultiPlan to deliver value for its many customers."

"We are pleased to partner with MultiPlan to drive its next phase of growth. MultiPlan is on the right side of healthcare, significantly reducing costs to insurers, employers and consumers," said Michael S. Klein, Chairman and CEO of Churchill. "MultiPlan has an unmatched, long-term track record of customer satisfaction and delivering high returns to investors. This transaction will enable the Company to enhance its capital structure and position it for substantial incremental growth. MultiPlan fits perfectly with Churchill's core mission to provide intellectual and financial capital to power the growth of great, market leading companies who operate in attractive industries, and can succeed more rapidly in the public markets with increased capital and the benefit of Churchill's Operating and Strategic Partners."

MultiPlan pioneered innovative and mission-critical transaction processing services for healthcare payers, including the industry's largest independent preferred provider network, that reduce medical spend, improve payment accuracy and advance their competitive position. MultiPlan's data- and technology-driven

services leverage the Company's 40 years of claim data, national reach, expansive provider network, strong relationships, innovative intellectual property and modern scale technology platform to create value for all stakeholders in the healthcare ecosystem. Further, MultiPlan brings affordability and fairness, delivering approximately $19 billion in medical cost reduction on over 135 million claims – bringing savings to payers and consumers alike.

Churchill Capital Corp III is a NYSE listed, $1.1 billion, equity growth investment company and is the third vehicle in the Churchill Capital group of companies. Churchill's strategy is to identify and complete initial business combinations with unique, leading companies in growing industries that will be catalyzed by the growth capital and transparency of the public equity markets and will be enhanced by the experience and expertise of Churchill's Operating and Strategic Partners, a group of leading Fortune 500 CEOs with exceptional shareholder value creation track records who invest directly in Churchill and are committed to assist MultiPlan in its next phase of growth.

**Summary of Transaction**

Churchill will contribute up to $1.1 billion of cash raised during its initial public offering in February 2020. Further, additional investors have committed to participate in the transaction through PIPE commitments to a $2.6 billion new private capital raise consisting of a $1.3 billion common stock at $10 per share and $1.3 billion of 6 percent interest convertible debt, with a conversion price of $13 per share. The convertible debt provides flexible capital, including a non-cash pay option.

The total investment of up to $3.7 billion raised in this transaction will be used to pay down existing debt, purchase a portion of the equity owned by existing MultiPlan shareholders and capitalize the MultiPlan balance sheet. As a result of this transaction, MultiPlan's leverage will be significantly reduced and its existing Net Debt to Adjusted EBITDA ratio will be reduced from 6.8x to approximately 5.8x with its Net Debt to Adjusted EBITDA at the operating company level decreasing to 4.1x1. The additional capital and public stock currency will allow the Company to advance its strategy of investing in organic and acquisition growth, and to increase its investment in data, machine learning and artificial intelligence technologies.

In connection with the transaction, Churchill's sponsor has entered into an agreement to amend the terms of its founder equity to align with the long-term value creation and performance of MultiPlan. Churchill's sponsor has agreed that a portion of its equity will vest only if the share price of the Company exceeds $12.50 per share over a period between the first and fifth anniversaries of the closing of the transaction, and have agreed not to transfer unvested equity. Churchill has received commitments from its investors and the new PIPE investors for funding that is sufficient to close the transaction.

The Boards of Directors of both Churchill and MultiPlan have unanimously approved the proposed transaction.

The transaction is expected to be completed by the end of October 2020, subject to approval by Churchill stockholders representing a majority of the outstanding Churchill voting power, the expiration of the HSR Act waiting period and other customary closing conditions.

## Insiders' Interests in the Proposed Transaction

28.     Churchill insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.   The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Churchill.

29.     For example if Churchill does not consummate a transaction or business combination by February 19, 2022 (or May 19, 2022 if Churchill has executed a letter of intent or similar agreement by February 19, 2022), Churchill will be forced to wind up its operations, liquidate, and the 27,500,00 initial shares held by Sponsor would be worthless as the Sponsor is not entitled to participate in any redemption or distribution with respect to such shares.   Similarly, simultaneously with Churchill's IPO the Sponsor purchased an aggregate of 23,000,000 private placement warrants from Churchill for an aggregate purchase price of $23,000,000.   These private placement warrants will become worthless if Churchill does not consummate a business combination by February 19, 2022 (or May 19, 2022 if Churchill has executed a letter of intent, or similar agreement by February 19, 2022).

30.     Further, Churchill has engaged The Klein Group, LLC ("KG"), an affiliate of defendant Michael Klein and the Sponsor and an affiliate and wholly owned subsidiary of M. Klein and Company, to act as Churchill's financial advisor in connection with the Proposed Transaction. Pursuant to this engagement, Churchill will pay KG a transaction fee of $15,000,000 and a

placement fee of $15,500,000 (of which up to $15,000,000 shall be payable in shares of Churchill's Class A common stock based on $10.00 per share), which is conditioned upon the completion of the Proposed Transaction. .

31.     Moreover, defendants Michael Klein and August have secured positions for themselves on the board of directors of the combined company.  As such, in the future each will receive any cash fees, stock options or stock awards that the post-combination board of directors determines to pay to its executive and non-executive directors.

**The Proxy Statement Contains Material Misstatements or Omissions**

32.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Churchill's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

33.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Churchill's financial advisors', Citigroup, Inc. ("Citi"), Goldman Sachs & Co. LLC ("Goldman") and KG, potential conflicts of interest and respective financial analyses; and (ii) the background of the Proposed Transaction.  Accordingly, Churchill stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning the Company's Financial Advisors' Potential Conflicts of Interest and Respective Financial Analyses***

34.     The Proxy Statement fails to disclose material information concerning the Company's financial advisors' potential conflicts of interest.

35.     For example, the Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by the Company's financial advisors.  According to the Company's July 12, 2020 press release announcing the Proposed Transaction, Citi and Goldman served as financial advisors to Churchill.  The Proxy Statement fails, however, to disclose: (i) the amount of compensation Citi and Goldman have received or will receive in connection with their engagements; (ii) the amount of Citi's and Goldman's compensation that is contingent upon the consummation of the Proposed Transaction; and (iii) the details of any past services Citi and Goldman have performed for any parties to the Merger Agreement or their affiliates, including the timing and nature of such services as well as the amount of compensation received by Citi and Goldman for providing such services.

36.     The Proxy Statement similarly fails to disclose material information regarding KG's potential conflicts of interest, including: (i) the details of any past services KG has performed for any parties to the Merger Agreement or their affiliates, including the timing and nature of such services as well as the amount of compensation received by KG for providing such services; and (ii) the amount of compensation defendant Michael Klein will receive as a result of KG's engagement.

37.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

38.     Moreover, the Proxy Statement fails to disclose material information concerning any financial analysis prepared by Citi, Goldman and KG, considered and relied upon by the Board, in connection with the Individual Defendants' decision to approve the Proposed Transaction.

39.     The omission of this information renders the statements in the "Background of the Transactions" and "Interests of Certain Persons in the Business Combination" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

40.     The Proxy Statement fails to disclose material information concerning the background process leading to the Proposed Transaction.

41.     For example, according to the Proxy Statement:

> Representatives of Churchill and the Sponsor contacted and were contacted by a number of individuals and entities with respect to acquisition opportunities. Churchill and the Sponsor evaluated several dozen potential acquisition targets, including targets that were identified by Churchill's management, advisory partners and representatives. In connection with evaluating such opportunities, representatives of Churchill and the Sponsor met and conducted preliminary discussions with representatives of, and commenced initial preliminary due diligence on, several potential target opportunities.

Proxy Statement at 100.  Critically, the Proxy Statement fails to disclose whether the Company entered into confidentiality agreements including standstill agreements with any of the potential acquisition targets, and if so, whether any of the standstill provisions are still in effect and/or are "don't ask, don't waive" standstill provisions.

42.     This information is material to Churchill's stockholders as a reasonable Churchill stockholder would find it material and important to their voting decision to know whether or not parties that had previously been interested in a potential combination are now foreclosed from submitting superior proposals.

43.     Additionally, the Proxy Statement fails to disclose the specific details of all employment and retention-related discussions and negotiations that occurred between MultiPlan and Churchill executive officers and directors, including who participated in all such communications, when they occurred and their content.  The Proxy Statement further fails to

disclose whether any of Churchill's proposals or indications of interest mentioned management retention or directorship in the combined company.

44.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Churchill's stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

45.     The omission of this material information renders the statements in the "Background of the Transactions" and "Interests of Certain Persons in the Business Combination" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

46.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Churchill stockholders will be unable to make an informed voting decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

47.     Plaintiff repeats all previous allegations as if set forth in full.

48.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

49.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information concerning Churchill's financial advisors' potential conflicts of interest and financial analyses and the background of the Proposed Transaction.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

50.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

51.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

52.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of
### Section 20(a) of the Exchange Act

53.     Plaintiff repeats all previous allegations as if set forth in full.

54.    The Individual Defendants acted as controlling persons of Churchill within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Churchill, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

55.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

57.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

58.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of defendants' conduct, Churchill's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Churchill, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Churchill stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  August 19, 2020

**WEISSLAW LLP**

By _____

Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*
